**BC**

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

**FILED**
4/12/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

| | |
|---|---|
| **Ramin Ghayoori**, | ) |
| Plaintiff, | ) |
| | )     Case No. 1:24-cv-07870 |
| V. | ) |
| | ) |
| **TravCo Insurance Company, et al.**, | ) |
| Defendants. | ) |

### PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 11(c)

Pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, Plaintiff **Ramin Ghayoori**, appearing pro se, respectfully moves this Honorable Court to impose sanctions against defense counsel **Thomas B. Orlando** and the law firm of **Foran Glennon Palandech Ponzi & Rudloff PC** for violations of Rule 11(b)(1) and (b)(3). This motion is brought to preserve the integrity of judicial proceedings and to curtail improper, unsupported, and harassing conduct displayed in Defendants' Reply brief [Dkt. No. 24] and related correspondence.

Attached hereto and incorporated by reference are the following exhibits:

- **Exhibit A**: Plaintiff's email to defense counsel dated November 27, 2024, clarifying independent authorship and Rule 11 compliance;
- **Exhibit B**: Excerpt from Defendants' Reply brief [Dkt. No. 24], containing the AI-related accusation;
- **Exhibit C**: Plaintiff's Rule 11(c)(2) Safe Harbor Notice dated March 23, 2025;
- **Exhibit D**: Defense counsel's written response dated March 25, 2025, refusing to withdraw the statement.

### I. INTRODUCTION

On December 6, 2024, counsel for Defendants submitted a Reply brief containing the following assertion:

> "The legal errors appear to be the fictional work product of generative artificial intelligence software." [Ex. B, Dkt. 24, at 1, ¶2]

This speculative and disparaging remark, wholly unmoored from the facts of record, was subsequently reiterated in counsel's November 27, 2024 letter to Plaintiff, in which defense counsel threatened sanctions based solely on conjecture that Plaintiff's filings may have been

authored by AI. This was done despite Plaintiff's explicit disavowal of any improper use of AI in a written response the same day. [Ex. A]

The above conduct:

1. Lacks any evidentiary support, in violation of **Rule 11(b)(3)**;
2. Serves no legitimate litigation purpose and was made to harass, demean, and intimidate a pro se litigant, in violation of **Rule 11(b)(1)**;
3. Was maintained in bad faith even after Plaintiff served a Rule 11(c)(2) safe harbor notice on March 23, 2025, which Defendants expressly declined to honor. [Exs. C, D]

This motion seeks appropriate relief to deter repetition of this conduct and to safeguard the dignity of the Court and all parties.

## II. LEGAL STANDARD

Under Rule 11(b), attorneys may not file pleadings for improper purposes such as harassment or intimidation and must ensure that factual contentions have evidentiary support. Rule 11(c) authorizes the Court to impose sanctions when these obligations are violated. Sanctions may be imposed **even after disposition of the underlying matter**. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

Frivolous or speculative accusations regarding misconduct or authorship of pleadings have been found sanctionable. See *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417–418 (S.D.N.Y. 2003); *Geller v. Deutsche Bank AG*, 2009 WL 1085820, at *5 (S.D.N.Y. Apr. 22, 2009);* and *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990).

## III. ARGUMENT

### A. The Accusation Was Factually Unsupported and Reckless

Plaintiff's November 27, 2024 email to defense counsel expressly stated:

> "While I utilize technology to assist with legal research and drafting, all filings reflect my own independent analysis, judgment, and compliance with Rule 11 as a pro se plaintiff." [Ex. A]

Despite this unambiguous clarification, Defendants insisted on characterizing Plaintiff's filings as potentially AI-generated without providing a shred of evidence. Such speculation fails to meet Rule 11(b)(3)'s basic threshold and improperly impugns Plaintiff's authorship and integrity.

### B. The Statement Served No Legal Purpose and Was Clearly Meant to Harass

The contested statement does not relate to any substantive legal argument or factual dispute in the case. It serves no purpose other than to ridicule Plaintiff and prejudice the Court

against him. Courts have repeatedly sanctioned attorneys for injecting personal attacks and rhetorical invective into legal pleadings. See *In re Kunstler*, 914 F.2d at 519.

## C. The Improper Conduct Was Not Withdrawn Despite Safe Harbor Notice

On March 23, 2025, Plaintiff served a Rule 11(c)(2) notice demanding withdrawal or amendment of the improper language. [Ex. C] On March 25, 2025, Defendants refused, stating they "stand on the reply brief as submitted." [Ex. D]

This deliberate refusal extinguished any opportunity for informal resolution and demonstrates bad faith, further justifying sanctions.

## IV. RELIEF REQUESTED

Plaintiff respectfully requests the following relief:

1. An order striking the offensive language from the Reply brief (Dkt. 24, at 1, ¶2);
2. A formal admonition or reprimand of defense counsel for improper conduct;
3. Clarification from the Court that unsupported and disparaging allegations against pro se litigants are impermissible and sanctionable;
4. Any additional relief this Court deems just and proper under Rule 11(c).

## V. CONCLUSION

Defendants' accusation that Plaintiff's filings were the "fictional work product of generative artificial intelligence" was not merely wrong – it was **reckless, unprofessional, and deeply prejudicial**. It seeks to chill access to justice for a pro se litigant through public disparagement and unfounded insinuation. The Court should act decisively to deter such behavior and affirm that truth and civility remain indispensable to the pursuit of justice.

Respectfully submitted,                    4/14/25

Ramin Ghayoori,                            /s/ Ramin Ghayoori
Plaintiff, Pro Se                          **Ramin Ghayoori**
P.O. Box 50203
Studio City, CA 91614

# Exhibit A

3/27/25, 8:05 PM
Gmail - Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 5 of 40 PageID #:355



Ramin Ghayoori <r4g4h4@gmail.com>

---

## Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint

---

**Ramin Ghayoori** <r4g4h4@gmail.com>                                   Wed, Nov 27, 2024 at 2:32 PM
To: "Orlando, Thomas B." <torlando@fgppr.com>
Bcc: Robert Hirsch <rob.hirsch.law@gmail.com>

**Dear Mr. Orlando,**

Thank you for your correspondence dated November 27, 2024. I take my obligations under Rule 11 of the Federal Rules of Civil Procedure with the utmost seriousness. I appreciate the opportunity to clarify and reaffirm the accuracy and sufficiency of my Response to Defendants' Motion to Dismiss. After carefully reviewing your concerns, I respectfully believe that, as a pro se plaintiff with no formal legal education, my Response fully complies with Rule 11 and is both factually and legally sound.

## 1. Misrepresentation Regarding "Travelers Insurance Company"

Your claim that my Response mischaracterizes Defendants' representations about the role of TravCo Insurance Company is misplaced.

**Failure to Distinguish Branding from Legal Identity:**
The pervasive use of the "Travelers" brand in Defendants' correspondence and policy documentation creates ambiguity about the proper legal entity responsible for policyholder obligations. As you concede, the correspondence consistently bore the "Travelers" logo and branding without sufficiently distinguishing TravCo Insurance Company. This ambiguity justifies my reliance on the name "Travelers Insurance Company" in my pleadings.

**Timing of Clarifications:**
While you allege that I was informed of the distinction between "TravCo" and "Travelers Insurance Company" in August 2024, this clarification was made only after litigation commenced. Prior to that, Defendants failed to differentiate TravCo as the proper entity, relying instead on the generalized "Travelers" brand, which reasonably caused confusion.

**Nonexistent Entity Argument:**
Defendants' Motion to Dismiss is based on a technical misidentification rather than a

substantive defense. My Response highlights that Rule 15 of the Federal Rules of Civil Procedure allows for amendments to correct misidentified parties without prejudice. Courts routinely reject attempts by defendants to evade liability by relying on technicalities in corporate branding.

## 2. Accuracy of Cited Case Law

Your assertion that my Response misapplies case law is unfounded.

**State Farm Fire & Cas. Co. v. Martin (186 Ill. 2d 367):**
I cited *Martin* to emphasize the principle that insurers owe a duty of good faith and fair dealing to their policyholders. While *Martin* specifically involves a policy exclusion for intentional acts, its broader reasoning supports the argument that bad faith conduct by insurers, including retaliatory actions or unjustified denials, undermines this duty. The retaliatory nonrenewal of my policy exemplifies the type of bad faith conduct that Illinois courts have consistently condemned. *Martin* also reinforces that courts look beyond the technical aspects of claims to evaluate whether insurers acted reasonably under the circumstances.

**Green v. International Ins. Co. (238 Ill. App. 3d 929):**
I relied on *Green* to illustrate the standard for determining when an insurer's actions are vexatious or unreasonable. Although *Green* primarily concerns delays in claim settlements, its principles apply to my allegations that Defendants disregarded contradictory evidence, relied on flawed reports, and failed to engage in good faith. The factual distinctions you raise do not negate the relevance of *Green's* analysis to the unreasonable conduct alleged in my case.

**Negligent Infliction of Emotional Distress (NIED):**
Your contention that Illinois law categorically requires a contemporaneous physical injury for NIED claims is overly restrictive. While Illinois traditionally applied the "impact rule," courts have recognized exceptions where defendants owe a specific duty to plaintiffs and their conduct foreseeably causes severe emotional harm. My Response outlines the elements of negligence, including duty, breach, causation, and harm, supported by allegations specific to my case. Illinois courts have found that emotional harm, in the absence of physical injury, may be compensable where the plaintiff's emotional distress is severe and arises from a breach of a special duty or relationship (*Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546 (1983); *Corgan v. Muehling*, 143 Ill. 2d 296 (1991)).

## 3. Claims Against Alan D. Schnitzer

Your interpretation of *Fontana v. TLD Builders, Inc.* and related cases overlooks the principle that corporate officers can be held personally liable for their tortious actions, even when acting within the scope of their corporate capacity.

**Direct Involvement in Misconduct:**

My allegations against Mr. Schnitzer are based on his direct participation in and authorization of conduct that caused harm to me as a policyholder. Illinois courts consistently hold that corporate officers may be held personally liable when they actively engage in, authorize, or negligently permit tortious conduct that causes harm (*Davis v. International Harvester Co.*, 167 Ill. App. 3d 814, 817-18 (1988)).

**Relevance of Case Law:**

While *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 840 N.E.2d 757 (2005), primarily addresses piercing the corporate veil, its reasoning underscores the accountability of corporate officers for actions that promote injustice or harm. Similarly, *People ex rel. Madigan v. Tang*, 346 Ill. App. 3d 277, 805 N.E.2d 243 (2004), emphasizes that corporate officers cannot evade liability for willful inaction or deliberate indifference to harm caused under their supervision.

These principles are directly applicable to Mr. Schnitzer's role in this case, where his direct involvement, failure to act, and willful perpetuation of harmful practices justifies personal liability under Illinois law.

## 4. Use of AI Tools

Your suggestion that my Response may have been prepared using an AI tool is irrelevant and speculative. While I utilize technology to assist with legal research and drafting, all filings reflect my own independent analysis, judgment, and compliance with Rule 11 as a pro se plaintiff with no formal legal education.

Rule 11 does not preclude the use of technology; rather, it requires that filings result from a reasonable inquiry under the circumstances. Based on my understanding, I stand by the arguments and citations in my Response as factually accurate, legally warranted, and fully compliant with my obligations as a pro se plaintiff.

## 5. Request for Withdrawal and Extension

I respectfully decline to withdraw my Response. As a pro se plaintiff with no formal legal education, I believe my filing is fully compliant with Rule 11 and supported by both fact and law. Moreover, I am concerned that your previous representations regarding settlement discussions were misleading and tactical. As such, I decline to

consider a stipulation to extend under the cloud of ongoing threats, which I believe are improper and prejudicial.

In conclusion, as a pro se plaintiff with no formal legal education, I believe my Response fully complies with the requirements of Rule 11, presenting well-supported factual and legal arguments that address the substantive issues in this case. I remain committed to diligently and respectfully pursuing this matter. Should you have further concerns or wish to propose procedural accommodations, I remain open to discussing them in good faith.

Thank you for your attention to this matter.

**Sincerely,**
Ramin Ghayoori
Plaintiff, Pro Se

[Quoted text hidden]

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELLA AND RAMIN LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-7870 |
| | ) |
| TRAVELERS INSURANCE COMPANY, and | ) |
| ALAN D. SCHNITZER, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
COUNTS II THROUGH V OF PLAINTIFF'S AMENDED COMPLAINT
AND TO DISMISS SCHNITZER**

NOW COME Defendants, TRAVCO INSURANCE COMPANY, incorrectly sued as

TRAVELERS INSURANCE COMPANY ("TravCo"), and ALAN D. SCHNITZER

("Schnitzer"), by and through their attorneys, and submit this Reply in support of their Motion to

Dismiss (Dkt. No. 20).

**INTRODUCTION**

As Defendants noted in their opening motion, the parties dispute whether TravCo owes

more money under the insurance policy (the "Policy") for several insurance claims submitted by

Plaintiff, RAMIN GHAYOORI ("Ghayoori"). This dispute is presented in Count I for breach of

contract, which allegations TravCo has answered. Defendants have moved to dismiss "Travelers

Insurance Company," Schnitzer, and the causes of action for bad faith (Count II), negligent

infliction of emotional distress (Count III), intentional infliction of emotional distress (Count

IV), and "uninhabitable living conditions" (Count V) from the action.

In his zeal to leave his Amended Complaint intact, Ghayoori misstates the law,

misinterprets existing law, cites cases that have nothing to do with the propositions he attributes

to them, and proffers facts that are not plausibly alleged and contrary to the plain language of the Policy and documents referenced in the Amended Complaint. The legal errors appear to be the fictional work product of generative artificial intelligence software. Despite Defendants' urging, Ghayoori has declined to amend his Response to correct the inaccuracies.[1] Therefore, Defendants use this Reply to do so.

When Ghayoori's Response is stripped of its fatal defects, there is no basis to deny Defendants the relief they seek. This Court should see this case for what it is—an uncomplicated, good faith disagreement over the scope of insurance coverage that can and should be resolved solely through Ghayoori's breach of contract claim against TravCo. The rest of the Amended Complaint is noise, which Defendants beseech the Court to silence.

## "TRAVELERS INSURANCE COMPANY" MUST BE DISMISSED

Ghayoori cites a litany of reasons why he believes that "Travelers Insurance Company" is a properly named defendant, each of which overlooks two basic and undisputed truths: (1) "Travelers Insurance Company" is not a legal entity, and (2), even if it was, "Travelers Insurance Company" is not a party to the insurance contract. TravCo, the legal entity that undisputedly issued the Policy to Ghayoori, is the only proper defendant in this case.

In his state court Complaint, Ghayoori first sued "Travelers Insurance Company," a nonexistent entity, and Schnitzer. (Dkt. No. 1-1, p. 2). Ghayoori later appropriately filed an Amended Complaint adding TravCo as a party, but he incorrectly left "Travelers Insurance

---

[1] Defendants filed their motion to dismiss at 4:11 p.m. on November 21. Ghayoori filed his 14-page Response just hours later at 11:39 p.m. On November 27, Defendants sent a letter to Ghayoori identifying areas where his arguments contravened his own allegations, and his generative AI software misstated the law, and requested that he file a corrected version of his Response consistent with his obligations under Fed. R. Civ. P. 11. On the same day, he declined the invitation to withdraw his Response, instead reiterating that his arguments and citations were factually accurate, legally warranted, and fully compliant with his obligations as a pro se plaintiff. For the reasons discussed in this Reply, Defendants disagree.

2

Company" as a Defendant.  (Dkt. No. 14).  As Ghayoori acknowledges in his Amended Complaint, TravCo is authorized to issue insurance policies in Illinois (¶ 3, p. 1) and issued the Policy (¶ 1, p. 3).  The Policy plainly states that the insurer is TravCo Insurance Company (Dkt. No. 20-1, p. 4):

**"Your Insurer:**       TRAVCO INSURANCE COMPANY"

Despite the Policy expressly identifying TravCo as the insurer, Ghayoori devotes three pages of his Response to arguing why "Travelers Insurance Company," a nonexistent entity, should also remain in the case.  Ghayoori argues that "Defendants' own communications identified 'Travelers Insurance Company' as the insurer" and "prominently bore the Travelers Insurance Company letterhead" and that "at no point prior to litigation did Defendants clarify that TravCo Insurance Company was the actual policy-issuing entity."  (Dkt. No. 21, p. 1-2).  As the letter attached hereto as Exhibit A shows, this is simply not true.[2]

The letter identifies the underwriting company as TravCo Insurance Company, consistent with the Policy.  The letter never uses the name "Travelers Insurance Company," which does not exist.  Instead, the letterhead bears the name "Travelers" next to the umbrella trademark, which is a trade name and trademark used by multiple different insurance companies and is not a legal entity.  If Ghayoori did not know who issued the Policy before litigation it was because he did

---

[2] A plaintiff can opt not to attach to his complaint documents upon which his action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.  *Id*.; *Cascades AV LLC v. Evertz Microsystems LTD*, No. 17 CV 7881, 2019 WL 172758, n. 3 (N.D. Ill. Jan. 11, 2019).  Here, the Amended Complaint refers to Defendants' denial of his claims.  (Dkt. No. 14, ¶ 5, p. 2).

not read the Policy, not because Defendants failed to disclose TravCo's role or engaged in any conduct that could reasonably be interpreted as misleading.

Ghayoori next contends that Defendants' request to dismiss "Travelers Insurance Company" is "an improper effort to avoid liability." (Dkt. No. 21, p. 3). This is also untrue. Defendants do not seek to dismiss TravCo. TravCo has in fact already answered Ghayoori's breach of contract claim. Defendants merely seek the dismissal of an entity that does not exist—"Travelers Insurance Company"—and, for that reason, is not identified anywhere in the Policy. There is nothing improper about this request, and Ghayoori provides no rationale for keeping a nonexistent entity in the case.

Lastly, Ghayoori makes a bizarre request that "should the Court find it necessary, Plaintiff seeks leave to amend the complaint to include TravCo Insurance Company." (Dkt. No. 21, p. 3). Since Ghayoori has already filed an Amended Complaint naming TravCo as a party, Defendants can only conclude that this is a mistaken request for relief generated by Ghayoori's generative AI software.

## ILLINOIS DOES NOT RECOGNIZE A COMMON LAW TORT FOR "BAD FAITH"

Defendants have moved to dismiss Ghayoori's claim for bad faith (Count II) because the Illinois Supreme Court has declined to recognize a common law tort for "bad faith." *Cramer v. Insurance Exchange Agency*, 174 Ill.2d 513, 675 N.E.2d 897 (1996). In *Cramer*, the court squarely addressed so-called insurer "bad faith," "declin[ing] to recognize a new common law tort where the legislature has passed a statutory scheme providing a limited remedy [Section 155]" and because "[t]o allow a bad-faith action would transform many breach of contract actions into independent tort actions." 174 Ill.2d at 526. *See also Western Howard Corp. v. Indian Harbor Ins. Co.*, No. 1:10-cv-7857, 2011 WL 2582353, *5 (N.D. Ill. June 29, 2011)

4

("The Supreme Court of Illinois has explained that this statute, while not the exclusive remedy for tortious conduct by an insurer, essentially substitutes for a separate tort of 'bad faith'").

Ghayoori (or the AI software) completely misapprehends *Cramer*, citing it for the proposition that Illinois law "explicitly allows tort claims for bad faith conduct when the insurer's actions rise to the level of extreme and outrageous behavior" (Dkt. No. 21, p. 4). But the words "extreme" and "outrageous" appear nowhere in the *Cramer* decision. (Dkt. No. 21, p. 4). Contrary to Ghayoori's contention, what *Cramer* explicitly holds is that, while "an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action," there is no independent tort of bad faith. 174 Ill.2d at 527.

Ghayoori's misstatements of Illinois law do not end there. For example, he cites *State Farm Fire & Cas. Co. v. Martin*, 186 Ill.2d 367, 710 N.E.2d 1228 (1999), for the proposition that "Illinois courts have repeatedly held that Section 155 does not preclude a separate tort claim for bad faith when the insurer's conduct is not merely a simple contract dispute but instead involves malicious, retaliatory, or reckless disregard for the insured's rights" and that "[r]etaliatory conduct of this nature exceeds the bounds of ordinary contract disputes and constitutes a separate actionable tort under Illinois law." (Dkt. No. 21, p. 4). Significantly, however, the case has nothing to do with Section 155 or the termination of an insurance policy or retaliatory conduct. *Martin* deals with an insurer's duty to defend and whether an *insured's* hiring of his tenant to set fire to a building was willful and wanton so as to preclude liability coverage under a policy exclusion for willful and malicious acts of *an insured*.

Ghayoori's reliance on *Green v. International Ins. Co.*, 238 Ill. App. 3d 929, 605 N.E.2d 1125 (1992), fares no better. Ghayoori contends that "Defendants knowingly relied on inaccurate condominium association reports while ignoring contradictory evidence provided by

5

Plaintiff, including expert findings and photographic documentation." (Dkt. No. 21, p. 4). According to Ghayoori, *Green* stands for the proposition that a "calculated decision to accept and rely on flawed evidence demonstrates a reckless disregard for the truth, violating Defendants' duty to act in good faith." (*Id.*). *Green*, however, merely held that "the court could reasonably conclude that defendant's conduct amounted to unreasonable and vexatious *delay* in settling plaintiff's claim." The court expressly stated that there was evidence that the insurer's position was in good faith. *Green* has nothing to do with the issues raised by Ghayoori's allegations. It appears clear that Ghayoori either did not read *Martin* or *Green* or understand them before he cited them.

The litany of alleged wrongs that Ghayoori packages in his "bad faith" cause of action are not separate and independent torts. *Cramer* disallows rebranding conduct not recognized as a separate and independent tort as "bad faith." Instead, Section 155 provides the exclusive remedy for conduct that is both vexatious and unreasonable. Ghayoori's tort action for bad faith must be dismissed because it does not exist under Illinois law.

## THE ALLEGATIONS DO NOT ESTABLISH THE ELEMENTS OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants seek dismissal of the claim for negligent infliction of emotional distress because Ghayoori has not alleged any "physical injury or impact" that "contemporaneously" occurred during the complained of conduct, let alone emotional distress that was caused by such a physical injury. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, 77 N.E.3d 50, 58 (2016); *Prokop v. Hileman*, 588 F.Supp.3d 825, n. 4 (N.D. Ill. 2022). Ghayoori wrongly contends that there is an exception to the physical impact rule when a plaintiff alleges the general elements for negligence: duty, breach, and proximate cause. No such exception exists—a

6

plaintiff claiming negligent infliction of emotional distress must allege duty, breach, proximate cause, *and* contemporaneous physical injury or impact. *Schweihs*, 77 N.E.3d at 59.

Ghayoori relies on *Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 457 N.E.2d 1 (1983), for the proposition that he need only allege the general elements for negligence to support his claim for negligent infliction of emotional distress. However, the court in *Schweihs* rejected this argument, holding that *Rickey* "did not eliminate the impact rule for negligent infliction of emotional distress claims brought by direct victims." 77 N.E.3d at 59. Because Ghayoori has not alleged any "physical injury or impact" that "contemporaneously" occurred during the complained of conduct, his claim for negligent infliction of emotional distress must be dismissed.

### THE ALLEGATIONS DO NOT ESTABLISH THE ELEMENTS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As for intentional infliction of emotional distress, Defendants noted in their opening motion that the tort may arise when (1) the conduct in question was "truly extreme and outrageous," (2) the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress, and (3) the conduct in fact caused severe emotional distress. *Schweihs*, 77 N.E.3d at 63; *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not rise to the level of extreme and outrageous conduct. *Schweihs*, at 63. As the Illinois Supreme Court explained in *Schweihs*, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

In his Response, citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976), Ghayoori represents that "Illinois courts have repeatedly held that insurer misconduct

7

targeting vulnerable policyholders, particularly when such conduct is deliberate and punitive, may constitute IIED." (Dkt. No. 21, p. 7). But *Public Finance Corp.* in fact has nothing to do with insurance and no such statement of the law is therein stated. Rather, *Public Finance Corp.* involved the actions of a debt collector.

Ironically, the court in *Public Finance Corp.* affirmed the dismissal of the claim for intentional infliction of emotional distress based on conduct that is either no different in degree or more egregious than that which Ghayoori alleges against Defendants here. For example, the plaintiff in *Public Finance Corp.* complained about the frequency and nature of the collection efforts (calls several times weekly, frequently more than once a day; visits to her home one or more times a week; calling her at the hospital where her daughter was being treated). Here, Ghayoori complains about the *infrequency* of Defendants' responses to his inquiries. Ignoring repeated communications is different in degree than collection efforts that border on harassment. Yet, even in that context, the court acknowledged that, while "[t]here can be no doubt that the conduct of the employees of Public Finance disturbed Davis and possibly caused her emotional distress[,] … [the complaint] contains no allegation of extreme or excessive conduct." 360 N.E.2d at 769.

Ghayoori argues that he has alleged "extreme and outrageous" conduct but no such facts are found in the Amended Complaint. Notably, the court in *Public Finance Corp.* analyzed the allegations "[s]tripped of the conclusions." 360 N.E.2d at 767. Here, too, the Court must strip the Amended Complaint of its conclusory allegations. *Gardener v. MeTV*, 681 F.Supp.3d 864, 867 (N.D. Ill. 2023), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

8

Stripped of its conclusory allegations of "extreme and outrageous" conduct, the Amended Complaint simply provides no support for Ghayoori's contention that Defendants' alleged conduct of terminating his insurance, ignoring repeated communications, and refusing to investigate or act in good faith was extreme and outrageous, as shown below.

Citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (Cal. Ct. App. 1970), Ghayoori contends that in California "[c]ourts have recognized that retaliatory cancellation of an insurance policy is egregious and unconscionable conduct, especially when it leaves a policyholder financially vulnerable." (Dkt. No. 21, p. 8). Not so. There, the court affirmed a jury verdict based on facts establishing that the disability insurer, "without probable cause … embarked upon *a concerted course of conduct to induce plaintiff to surrender his insurance policy* or enter into a disadvantageous 'settlement' of a nonexistent dispute by means of false and threatening letters and the employment of economic pressure based upon his disabled and, therefore impecunious, condition, (the very thing insured against) exacerbated by Western National's malicious and bad faith refusal to pay plaintiff's legitimate claim." 10 Cal.App.3d at 392 (emphasis added). Defendants conceded that their conduct was deplorable and outrageous but defended the action primarily on the basis that the plaintiff was not severely emotionally disturbed by their conduct. *Id*.

Here, in contrast, Ghayoori alleges only that "[i]n June 2024, Defendants retaliated against Plaintiff by terminating his insurance policy altogether. This termination was executed without cause and appears to have been intended to further punish Plaintiff for his ongoing efforts to secure the compensation he was rightfully owed under the terms of the policy." (Dkt. No. 14, ¶ 10, p. 3). Significantly, however, the Policy expressly allows for the nonrenewal or cancellation of the Policy. (Dkt. No. 20-1, p. 58-59). Ghayoori makes no allegation that TravCo

breached these provisions of the Policy.  Instead, he alleges that the "termination" was "without cause" (with no allegation concerning the reason for termination) and in apparent retaliation for his claims.  These are conclusory allegations in and of themselves, rendering the allegations of extreme and outrageous conduct doubly conclusory.  A claim for intentional infliction of emotional distress does not arise from the termination of an insurance policy which the insured believes was terminated in retaliation for presenting insurance claims, especially where the insured does not allege that the cancellation or nonrenewal of the policy was wrongful.

In support of his allegation that Defendants "ignored repeated communications in the face of crisis" (Dkt. No. 21, p. 8), Ghayoori relies on *Doe v. Calumet City*, 161 Ill.2d 374, 641 N.E.2d 498 (1994), for the proposition that "Illinois law recognizes that conduct exploiting a person's known vulnerability, particularly in times of crisis, satisfies the standard for outrageous behavior."  (Dkt. No. 21, p. 8).  There, the court found that a mother and her minor children, who brought action against a city and its police officers regarding the officers' response to a 911 call arising out of an incident in which the mother was locked out of her apartment and the alleged rapist was in the apartment with her children, stated a cause of action for intentional infliction of emotional distress with respect to the officer who was in control at the scene.  Unlike the plaintiffs in *Doe*, Ghayoori alleges no vulnerability that was known to Defendants or any crisis that was comparable to the *Doe* scenario.  Ignoring communications (even if true, and it is not) is not so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  *Schweihs*, 77 N.E.3d at 63.

Finally, Ghayoori argues that the tort of intentional infliction of emotional distress can arise merely from an insurer's refusal to investigate or act in good faith.  However, as shown in

10

Defendants' opening motion, a claim for bad faith denial of benefits framed as a claim for intentional infliction of emotional distress is preempted by Section 155. *Busse v. Paul Revere Life Ins. Co.*, 341 Ill.App.3d 589, 598, 793 N.E.2d 779 (1st Dist. 2003), citing *Combs v. Insurance Co. of Illinois*, 146 Ill.App.3d 957, 497 N.E.2d 503 (1st Dist. 1986). In *Combs*, the insured argued that similar allegations were sufficient to support a claim for intentional infliction of emotional distress. The court disagreed, explaining that, "stripped of its legal conclusions," the attempted cause of action "frames the allegations in terms of a breach of a duty of good faith," and, therefore, "the basis of the allegations remains grounded in unreasonable and vexatious refusal or delay in paying the insurance proceeds." *Id*. at 963-964. The court affirmed the dismissal of the insured's intentional infliction of emotional distress claim because the alleged conduct was "the same as that governed by section 155." *Id*. at 964. This Court has also acknowledged that emotional distress claims are preempted by Section 155 when, after removing conclusory statements such as "extreme and outrageous," "emotional distress," and "fraudulent," the insured's claims amount to an insurance coverage dispute or are based on other alleged conduct addressed by Section 155. *See, e.g., Rodriguez v. Mutual of Omaha*, Case No. 22-cv-6121, 2023 WL 7298929, *3 (N.D. Ill. Nov. 6, 2023); *Obermeier v. Equitable Life Assur. Soc. Of U.S.*, Case No. 97 C 3565, 1997 WL 754110 (N.D. Ill. Nov. 24, 1997).

Ghayoori does not address any of this authority in his Response. His Amended Complaint fails to establish insurer conduct that gives rise to the separate and independent tort of intentional infliction of emotional distress.

Nor does the Amended Complaint, stripped of its conclusory allegations, establish *severe* emotional distress. "Anxiety, frustration, and helplessness" (Dkt. No. 21, p. 8) are not severe emotional conditions. *Public Finance Corp.*, 360 N.E.2d at 767 ("Although fright, horror, grief,

11

shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").

Ghayoori's conclusory allegation of severe emotional distress from "uninhabitable living conditions," "financial devastation," and "emotional harm" from being "abandoned" by his insurer cannot save his claim from dismissal. (Dkt. No. 21, p. 8). Critically, Ghayoori alleges in his Amended Complaint that he *resides in California* from where he manages the subject property in Illinois. (Dkt. No. 14, ¶ 1, p. 1). Thus, he was not experiencing any "uninhabitable living conditions" at the subject property. Further, Defendants did not cause the damage which Ghayoori claims renders the property unfit for rental. At issue is whether there is insurance coverage for "water damage caused by persistent and recurring roof leaks that worsened over time despite the Plaintiff's attempts to mitigate further damage." (Dkt. No. 14, ¶ 3, p. 2).

Not only has Ghayoori not alleged facts from which a jury could find that he suffered *severe* emotional distress, but TravCo's denial of portions of his insurance claims for a persistently leaky roof that was not properly maintained does not establish a claim for intentional infliction of emotional distress because Defendants would have no reason to know that severe emotional distress was certain or substantially certain to result from its claims decisions. *Public Finance Corp.*, 360 N.E.2d at 767. Because none of the elements for intentional infliction of emotion distress has been alleged, and because a claim for intentional infliction of emotional distress in the insurance context is preempted by Section 155, this claim must be dismissed.

### THERE IS NO STANDALONE TORT FOR "UNINHABITABLE LIVING CONDITIONS"

Count V of Ghayoori's complaint for "uninhabitable living conditions" must be dismissed because there is no recognized tort for uninhabitable living conditions and, as

Defendants explained in their opening motion, there is no reason to invent one because the complained of conduct—"Defendants' refusal to cover the necessary repairs" (Dkt. No. 14, p. 4)—is the same conduct that potentially can support a breach of contract claim and the kind of conduct which Section 155 governs (violation of which Ghayoori does not allege here). Indeed, the Policy includes coverage for "loss of use" where there is covered damage to the property resulting in the loss of use and the specific requirements for that coverage are satisfied. (Exhibit A, TRAVELERS DOC MGMT, p. 20 of 74).

In his Response, Ghayoori "clarifies that this claim seeks consequential damages arising from Defendants' breach of contract and bad faith conduct." (Dkt. No. 21, p. 9). Ghayoori then launches into a dissertation on consequential damages, but that is beyond the scope of Defendants' motion. While Defendants disagree that Ghayoori's breach of contract claim would entitle him to the enumerated consequential damages in the event he prevails, that is an issue for another day. At issue now is simply whether he can bring a separate claim for "uninhabitable living conditions." As Ghayoori now concedes that this claim cannot standalone from his breach of contract claim, it should be dismissed.

## SCHNITZER MUST BE DISMISSED

As explained in Defendants' opening motion, Schnitzer is the chairman and chief executive officer of The Travelers Companies, Inc., a holding company that does not issue insurance policies or adjust insurance claims and is the ultimate parent company of various companies that issue insurance policies, such as TravCo. Schnitzer is not an officer or employee of TravCo, which issued the insurance policy at issue. Ghayoori does not contend otherwise in his Response. Thus, at issue is whether there is any basis for Ghayoori to sue the CEO of TravCo's ultimate parent company. There is not.

13

For starters, Ghayoori does not dispute that the Policy is between him and TravCo, and he makes no argument as to how Schnitzer can be liable for breach of a contract to which he is not a party. The breach of contract claim against Schnitzer must be dismissed.

That leaves the attempted tort claims which, as discussed, should be dismissed as to all Defendants. However, assuming, *arguendo*, that any of the tort claims survive against TravCo, none of them is viable against Schnitzer for the simple reason that on the facts alleged Schnitzer owed no duty to Ghayoori and his alleged "failure" to respond to Ghayoori's communications neither created a duty nor gave rise to a tort.

In his Response, Ghayoori contends that "Illinois law unequivocally holds that corporate officers can be personally liable for their own tortious conduct, even if such actions occur within the scope of their corporate roles," citing *Fontana v. TLD Builders, Inc.*, 362 Ill.App.3d 491, 840 N.E.2d 757 (2005). This case does not stand for such a proposition; rather it addresses the doctrine of piercing the corporate veil, which requires a showing that: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." Ghayoori has not alleged, and has no basis to allege, that this legal doctrine could apply to Schnitzer, the CEO of a Fortune 500 company whose subsidiary insurance companies, like TravCo, are separately licensed and regulated in the states in which they do business.

Not only can Schnitzer not be liable for the conduct of TravCo, but Ghayoori has alleged no independent duty that Schnitzer owed him, and he has not responded to any of Defendants' arguments regarding this issue. Instead, Ghayoori cites cases that provide no support for his

14

proposition that Schnitzer, a corporate officer, can be liable to him for the alleged torts. *See, People ex rel. Madigan v. Tang*, 346 Ill.App.3d 277, 805 N.E.2d 243 (2004) (addressing the circumstances for imposing liability on a corporate officer under the Illinois Environmental Protection Act); *Davis v. International Harvester Co.*, 167 Ill.App.3d 814, 521 N.E.2d 1282 (1988) (whether a manufacturer's failure to exercise care is so gross that it shows a lack of regard for the safety of others; no corporate officer liability involved); *Bank of America, N.A. v. 108 N. State Retail LLC*, 401 Ill.App.3d 158, 928 N.E.2d 42 (2010) (whether under the Foreclosure Law there was a "reasonable probability" that the plaintiff would prevail in the underlying foreclosure action and whether the defendants presented evidence to establish "good cause" for not appointing a receiver).

It is abundantly clear that Ghayoori has presented nothing other than an ordinary insurance coverage dispute to which TravCo is the only proper party. Because Schnitzer's only connection to Ghayoori's claims is his position as CEO of TravCo's ultimate parent company, his status is not a basis of liability, and he should be dismissed from the action with prejudice.

## AFFIRMATIVE DEFENSES SHOULD NOT BE STRICKEN

At the conclusion of his Response, Ghayoori requests that the Court strike Defendants' affirmative defenses in violation of Fed. R. Civ. P. 7(b) ("a request for a court order must be made by motion"). Defendants request that the Court order Ghayoori to resubmit this request in the form of a motion (after he has considered Rule 11). If the Court is inclined to consider the request to strike in the Response without further filing by Ghayoori, Defendants request leave to file a response to the request to strike the affirmative defenses.

WHEREFORE, Defendants, TRAVCO INSURANCE COMPANY, incorrectly sued as TRAVELERS INSURANCE COMPANY, and ALAN D. SCHNITZER, renew their prayer for

15

the entry of an order (1) dismissing with prejudice Defendants, ALAN D. SCHNITZER and

"TRAVELERS INSURANCE COMPANY", (2) dismissing the claims for bad faith, negligent

infliction of emotional distress, intentional infliction of emotional distress, and "uninhabitable

living conditions" stated in Counts II through V of the Amended Complaint of Plaintiff, RAMIN

GHAYOORI, and (3) directing the clerk of court to change the case caption to "Ramin Ghayoori

v. TravCo Insurance Company," together with such other and further relief deemed just and

proper, including but not limited to striking that portion of the Response seeking to strike

Defendants' affirmative defenses or granting Defendants leave to file a response to same, and

admonishing Plaintiff regarding his responsibilities under Fed. R. Civ. P. 11.

Respectfully submitted,

/s/ Thomas B. Orlando
Thomas B. Orlando
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
312-863-5000
torlando@fgppr.com

Attorneys for Defendants,
TRAVCO INSURANCE COMPANY, incorrectly
sued as TRAVELERS INSURANCE COMPANY,
and ALAN D. SCHNITZER

16

**CERTIFICATE OF SERVICE**

        I hereby certify that a copy of the above document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 6th day of December 2024.

**Pro Se**
Dr. Ramin Ghayoori
r4g4h4@gmail.com

/s/ Thomas B. Orlando
Thomas B. Orlando
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
312-863-5000
torlando@fgppr.com

17

# Exhibit C

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 28 of 40 PageID #:378

 **Gmail**

Ramin Ghayoori <r4g4h4@gmail.com>

## Rule 11 Safe Harbor Notice – Ghayoori v. TravCo ,et al (Case No. 1:24-cv-07870)

**Ramin Ghayoori** <r4g4h4@gmail.com>                                       Sun, Mar 23, 2025 at 11:17 PM
To: "Orlando, Thomas B." <torlando@fgppr.com>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Mr. Orlando,

Please find attached my formal Rule 11(c)(2) Safe Harbor Notice regarding specific statements made in your Reply brief filed on December 6, 2024 (Dkt. No. 24) and your correspondence dated November 27, 2024.

As outlined in the letter, the statements in question are factually unsupported, legally irrelevant, and appear intended to intimidate or disparage me as a pro se litigant. Pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, I respectfully request that you withdraw or appropriately amend the challenged material within **21 days** of this notice.

If no corrective action is taken by **April 13, 2025**, I intend to file a formal Motion for Sanctions with the Court.

This notice is made in good faith and with the goal of preserving the integrity of the judicial process.

Sincerely,
**Ramin Ghayoori**
Plaintiff, Pro Se
r4g4h4@gmail.com
P.O. Box 50203
Studio City, CA 91614

---

 **Correspondance.pdf**
84K

**Ramin Ghayoori**
P.O. Box 50203
Studio City, CA 91614
r4g4h4@gmail.com

**3/23/25**

**Via Email**
Thomas B. Orlando
Foran Glennon Palandech Ponzi & Rudloff PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
torlando@fgppr.com

---

RE: NOTICE UNDER RULE 11(c)(2) – DEMAND TO WITHDRAW OR AMEND IMPROPER STATEMENTS

**Case No. 1:24-cv-07870 – Ghayoori v. TravCo Insurance Company et al.**

Dear Mr. Orlando:

This letter serves as formal notice pursuant to **Rule 11(c)(2)** of the Federal Rules of Civil Procedure. I am writing to give you and your clients the required opportunity to withdraw or appropriately amend specific **factually unsupported and improper statements** made in your **Reply brief filed on December 6, 2024 [Dkt. No. 24]**, and in your **November 27, 2024 letter** to me.

In particular, your Reply brief states the following on **page 1, paragraph 2**:

> "The legal errors appear to be the fictional work product of generative artificial intelligence software."

This accusation is repeated and emphasized in your November 27 letter, where you assert that my filings violate Rule 11 and demand their withdrawal based on speculation that they were drafted by generative AI. These statements are:

1. **Irrelevant** to any legal issue before the Court;

2. **Unsupported by any evidence whatsoever**; and

3. **Clearly intended to intimidate and disparage me as a pro se litigant**.

These actions violate **Rule 11(b)(1)** (improper purpose, including harassment) and **Rule 11(b)(3)** (lack of evidentiary support for factual contentions). Moreover, introducing speculative and unfounded claims into a court filing and threatening sanctions in bad faith is itself sanctionable conduct.

You are hereby notified that, unless you withdraw or appropriately amend the aforementioned statements within **21 days** of the date of this letter, I will file a formal **Motion for Sanctions under Rule 11(c)** with the Court. This motion will seek all appropriate relief, including sanctions against your firm for advancing false and abusive assertions in pleadings and correspondence.

This notice is served in good faith and with the goal of preserving the integrity of the judicial process.

Sincerely,

**/s/ Ramin Ghayoori**
 Ramin Ghayoori
 Plaintiff, Pro Se

# Exhibit D

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 32 of 40 PageID #:382

 Gmail

**Ramin Ghayoori <r4g4h4@gmail.com>**

## Rule 11 Safe Harbor Notice – Ghayoori v. TravCo ,et al (Case No. 1:24-cv-07870)

**Orlando, Thomas B.** <torlando@fgppr.com>      Tue, Mar 25, 2025 at 4:47 PM
To: Ramin Ghayoori <r4g4h4@gmail.com>

**Dr. Ghayoori,**

**I have reviewed your Rule 11 letter and discussed it with my clients.**

**Your letter takes issue with the statement in our reply brief that "the legal errors appear to be the fictional work product of generative artificial intelligence software" and several other similar statements regarding the use of AI technology. We note that your letter does not disavow the use of AI in the preparation of your court filings. Instead, you contend that our statement is factually unsupported.**

**The basis of our statement comes from the following representations in your November 27 email to me (attached):**

Your suggestion that my Response may have been prepared using an AI tool is irrelevant and speculative. While I utilize technology to assist with legal research and drafting, all filings reflect my own independent analysis, judgment, and compliance with Rule 11 as a pro se plaintiff with no formal legal education.

**We believe the statement in our reply brief that it "appears" you are using AI is fairly and reasonably supported by the representations in your November 27 letter. As such, we stand on the reply brief as submitted to the court.**

**Thomas B. Orlando**
Attorney at Law

FG **FORAN GLENNON**

222 N. LaSalle Street, Suite 1400
Chicago, Illinois 60601
**Office:** 312.863.5020
**Mobile:** 773.350.6843
**Email:** torlando@fgppr.com

Chicago | Irvine | San Francisco | New York | London
Denver | Nashville | Sacramento | San Jose | Tampa

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

[Quoted text hidden]

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 33 of 40 PageID #:383

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

---------- Forwarded message ----------
From: Ramin Ghayoori <r4g4h4@gmail.com>
To: "Orlando, Thomas B." <torlando@fgppr.com>
Cc:
Bcc:
Date: Wed, 27 Nov 2024 22:32:01 +0000
Subject: Re: Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint

**Dear
Mr. Orlando,**

Thank
you for your correspondence dated November 27, 2024. I take my obligations under Rule 11 of the Federal Rules of Civil Procedure with the utmost seriousness. I appreciate the opportunity to clarify and reaffirm the accuracy and sufficiency of my Response to
Defendants' Motion to Dismiss. After carefully reviewing your concerns, I respectfully believe that, as a pro se plaintiff with no formal legal education, my Response fully complies with Rule 11 and is both factually and legally sound.

**1.
Misrepresentation Regarding "Travelers Insurance Company"**

Your
claim that my Response mischaracterizes Defendants' representations about the role of TravCo Insurance Company is misplaced.

**Failure
to Distinguish Branding from Legal Identity:**

The pervasive
use of the "Travelers" brand in Defendants' correspondence and policy documentation creates ambiguity about the proper legal entity responsible for policyholder obligations. As you concede, the correspondence consistently bore the "Travelers" logo and branding
without sufficiently distinguishing TravCo Insurance Company. This ambiguity justifies my reliance on the name "Travelers Insurance Company" in my pleadings.

**Timing
of Clarifications:**

While you allege
that I was informed of the distinction between "TravCo" and "Travelers Insurance
Company" in August 2024, this clarification was made only after litigation
commenced. Prior to that, Defendants failed to differentiate TravCo as the proper
entity, relying instead
on the generalized "Travelers" brand, which reasonably caused confusion.

**Nonexistent
Entity Argument:**

Defendants'
Motion to Dismiss is based on a technical misidentification rather than a substantive
defense. My Response highlights that Rule 15 of the Federal Rules of Civil
Procedure allows for amendments to correct misidentified parties without prejudice.
Courts routinely
reject attempts by defendants to evade liability by relying on technicalities in
corporate branding.

**2.
Accuracy of Cited Case Law**

Your
assertion that my Response misapplies case law is unfounded.

**State
Farm Fire & Cas. Co. v. Martin (186 Ill. 2d 367):**

I cited
*Martin*
to emphasize the principle that insurers owe a duty of good faith and fair dealing to
their policyholders. While
*Martin*
specifically involves a policy exclusion for intentional acts, its broader reasoning
supports the argument that bad faith conduct by insurers, including retaliatory
actions or unjustified denials, undermines this duty. The retaliatory nonrenewal of my
policy

exemplifies the type of bad faith conduct that Illinois courts have consistently condemned.

*Martin*

also reinforces that courts look beyond the technical aspects of claims to evaluate whether insurers acted reasonably under the circumstances.

## Green
## v. International Ins. Co. (238 Ill. App. 3d 929):

I relied on
*Green*
to illustrate the standard for determining when an insurer's actions are vexatious or unreasonable. Although
*Green*
primarily concerns delays in claim settlements, its principles apply to my allegations that Defendants disregarded contradictory evidence, relied on flawed reports, and failed to engage in good faith. The factual distinctions you raise do not negate the relevance
of *Green's*
analysis to the unreasonable conduct alleged in my case.

## Negligent
## Infliction of Emotional Distress (NIED):

Your contention
that Illinois law categorically requires a contemporaneous physical injury for NIED claims is overly restrictive. While Illinois traditionally applied the "impact rule," courts have recognized exceptions where defendants owe a specific duty to plaintiffs and their conduct foreseeably causes severe emotional harm. My Response outlines the elements of negligence, including duty, breach, causation, and harm, supported by allegations specific to my case. Illinois courts have found that emotional harm, in the absence
of physical injury, may be compensable where the plaintiff's emotional distress is severe and arises from a breach of a special duty or relationship (*Rickey*
*v. Chicago Transit Authority*,
98 Ill. 2d 546 (1983); *Corgan*
*v. Muehling*,
143 Ill. 2d 296 (1991)).

Gmail - Rule 11 Safe Harbor Notice - Chazonzizc Through a (Case No. 1:24-cv-0870)

**3.**

# Claims Against Alan D. Schnitzer

Your
interpretation of *Fontana
v. TLD Builders, Inc.*
and related cases overlooks the principle that corporate officers can be held
personally liable for their tortious actions, even when acting within the scope of their
corporate capacity.

**Direct
Involvement in Misconduct:**

My allegations
against Mr. Schnitzer are based on his direct participation in and authorization of
conduct that caused harm to me as a policyholder. Illinois courts consistently hold
that corporate officers may be held personally liable when they actively engage in,
authorize,
or negligently permit tortious conduct that causes harm (*Davis
v. International Harvester Co.*,
167 Ill. App. 3d 814, 817-18 (1988)).

**Relevance
of Case Law:**

While
*Fontana v.
TLD Builders, Inc.*,
362 Ill. App. 3d 491, 840 N.E.2d 757 (2005), primarily addresses piercing the
corporate veil, its reasoning underscores the accountability of corporate officers for
actions that promote injustice or harm. Similarly,
*People ex rel.
Madigan v. Tang*,
346 Ill. App. 3d 277, 805 N.E.2d 243 (2004), emphasizes that corporate officers
cannot evade liability for willful inaction or deliberate indifference to harm caused
under their supervision.

These
principles are directly applicable to Mr. Schnitzer's role in this case, where his direct

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 37 of 40 PageID #:387

involvement, failure to act, and willful perpetuation of harmful practices justifies personal liability under Illinois law.

## 4.
## Use of AI Tools

Your
suggestion that my Response may have been prepared using an AI tool is irrelevant and speculative. While I utilize technology to assist with legal research and drafting, all filings reflect my own independent analysis, judgment, and compliance with Rule 11
as a pro se plaintiff with no formal legal education.

Rule
11 does not preclude the use of technology; rather, it requires that filings result from a reasonable inquiry under the circumstances. Based on my understanding, I stand by the arguments and citations in my Response as factually accurate, legally warranted,
and fully compliant with my obligations as a pro se plaintiff.

## 5.
## Request for Withdrawal and Extension

I
respectfully decline to withdraw my Response. As a pro se plaintiff with no formal legal education, I believe my filing is fully compliant with Rule 11 and supported by both fact and law. Moreover, I am concerned that your previous representations regarding
settlement discussions were misleading and tactical. As such, I decline to consider a stipulation to extend under the cloud of ongoing threats, which I believe are improper and prejudicial.

In
conclusion, as a pro se plaintiff with no formal legal education, I believe my Response fully complies with the requirements of Rule 11, presenting well-supported factual and legal arguments that address the substantive issues in this case. I remain committed
to diligently and respectfully pursuing this matter. Should you have further concerns or wish to propose procedural accommodations, I remain open to discussing them in good faith.

Case: 1:24-cv-07870 Document #: 30 Filed: 04/12/25 Page 38 of 40 PageID #:388

Thank
you for your attention to this matter.

**Sincerely,**


Ramin Ghayoori


Plaintiff,
Pro Se



On Wed, Nov 27, 2024 at 9:58 AM Orlando, Thomas B. <torlando@fgppr.com> wrote:

> **Dr. Ghayoori,**
>
>
> **Please see attached letter regarding your response brief.**
>
>
> **Thomas B. Orlando**
> Attorney at Law
>
>
> FG  FORAN GLENNON
>
>
> 222 N. LaSalle Street, Suite 1400
> Chicago, Illinois  60601
> **Office:** 312.863.5020
> **Mobile:** 773.350.6843
> **Email:** torlando@fgppr.com
>
>
> Chicago | Irvine | San Francisco | New York | London
> Denver | Las Vegas | Nashville | Sacramento | San Jose | Tampa
>
> CONFIDENTIALITY WARNING:  This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.
>
> _____
>
>
> **From:** Orlando, Thomas B. <torlando@fgppr.com>
> **Sent:** Thursday, November 21, 2024 4:40 PM
> **To:** Fecteau, Janet <jfecteau@fgppr.com>; r4g4h4@gmail.com
> **Subject:** RE: Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint
>
>
> **Dr. Ghayoori,**

**Here is the court's procedure on motions:**

> **Motion practice:** Until further notice, parties should not notice motions for presentment. Parties may request a hearing for motions that they believe cannot be decided based on written submissions alone or that would otherwise benefit from a court hearing. The request must be made in the motion itself or by joint e-mail to the courtroom deputy. For any motion the parties believe would benefit from briefing, the parties should jointly e-mail the Courtroom Deputy within 2 business days of the filing of the motion to request a briefing schedule. Please be advised that the Court may set a motion hearing or a briefing schedule for any motion without a request from the parties

**Let me know if you want to file a written response to the motion to dismiss and, if so, how much time you need (28 days is typical).**

**Thomas B. Orlando**
Attorney at Law

FG  FORAN GLENNON

> 222 N. LaSalle Street, Suite 1400
> Chicago, Illinois 60601
> **Office:** 312.863.5020
> **Mobile:** 773.350.6843
> **Email:** torlando@fgppr.com

Chicago | Irvine | San Francisco | New York | London
Denver | Las Vegas | Nashville | Sacramento | San Jose | Tampa

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Fecteau, Janet <jfecteau@fgppr.com>
**Sent:** Thursday, November 21, 2024 4:24 PM
**To:** r4g4h4@gmail.com
**Cc:** Orlando, Thomas B. <torlando@fgppr.com>
**Subject:** Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint

Dear Dr. Ghayoori:

Attached please find Travco's Answer and Affirmative Defenses and Defendants' Motion to Dismiss Amended Complaint in the matter of *Ella and Ramin LLC v. Travelers*; Case No. 1:24-cv-7870.

Regards,

**Janet Fecteau**
Administrative Assistant

FG  FORAN GLENNON

222 N. LaSalle Street, Suite 1400
Chicago, Illinois  60601
**Office:** 312.863.5046
**Email:** jfecteau@fgppr.com

Chicago | Irvine | San Francisco | New York | London
Denver | Las Vegas | Nashville | Sacramento | San Jose | Tampa

CONFIDENTIALITY WARNING:  This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

📄 **Re: Ella and Ramin LLC v. Travelers; Case No. 1:24-cv-7870 - Answer and Affirmative Defenses and Motion to Dismiss Amended Complaint.eml**
92K